1

MILLER SHAH LLP
Kolin C. Tang (SBN 279834)

2

19712 MacArthur Blvd., Suite 222
Irvine, CA 92612

3

Telephone: (866) 545-5505
Facsimile: (866) 300-7367

4

Email: kctang@millershah.com

5

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

6

ROBERT K. SHELQUIST*
MEGAN S. VAN DYKE*

7

CATHERINE A. PETERSON*

8

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

9

Telephone: (612) 339-6900
Facsimile:  (612) 339-0981

10

E-mail: rkshelquist@locklaw.com
E-mail: msvandyke@locklaw.com

11

E-mail: capeterson@locklaw.com

12

**Attorneys for Plaintiff**

13

*Pro Hac Vice* admission to be sought
[Additional Counsel on Signature Page]

14

15

UNITED STATES DISTRICT COURT

16

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

17

LAUREN GOODWIN-KOENIG,

18

Case No.: 1:22-at-113

19

Plaintiff,

**CLASS ACTION COMPLAINT FOR**:

20

v.

(1) NEGLIGENT MISREPRESENTATION;
(2) VIOLATIONS OF THE CALIFORNIA

21

TARGET CORPORATION,

CONSUMER LEGAL REMEDIES ACT;
(3) VIOLATIONS OF THE CALIFORNIA

22

Defendant.

FALSE ADVERTISING LAW;
(4) VIOLATIONS OF THE CALIFORNIA

23

UNFAIR COMPETITION LAW;
(5) BREACH OF EXPRESS WARRANTY;

24

6) BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY;

25

(7) UNJUST ENRICHMENT;
(8) FRAUDULENT

26

MISREPRESENTATION; AND
(9) FRAUD BY OMISSION.

27

28

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

1.      Plaintiff Lauren Goodwin-Koenig ("**Plaintiff**"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Target Corporation ("**Defendant**"), for its negligent, reckless, and/or intentional practice of mismarketing its Up & Up  Prenatal Vitamins ("**Products**" or "**Prenatal Vitamins**")[1] sold throughout the United States.   Defendant's mismarketing is twofold. First, Defendant fails to disclose the presence, or risk, of dangerous substances in its Prenatal Vitamins, including heavy metals. Second, Defendant misrepresents the quantity of ingredients in its Prenatal Vitamins, including the amount of Folic Acid. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full and accurate disclosure of all dangerous substances, ingredients, and nutrients in its marketing, advertising, and labeling, and restoring monies to the members of the proposed Class.  Plaintiff alleges the following based upon personal knowledge as well as investigation by her counsel, and as to all other matters, upon information and belief, Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

---

[1] As used herein, "**Product**" or "**Prenatal Vitamin**" includes any prenatal product Defendant refers to as a supplement, multivitamin, multimineral, prenatal, or gummy, and collectively refers to any omissions regarding the risk of exposure to heavy metals and/or the presence of heavy metals, and/or misrepresentations regarding quality control, and/or misrepresentations regarding the quantity or amount of the ingredients, including folic acid, as stated on the label, and/or misrepresentations regarding the quantity or amount of the ingredients, including folic acid, in the formulation of the following Up & Up products: Prenatal Multivitamin; Prenatal Vitamins; and Prenatal Multivitamin Gummies – Lemon & Raspberry Lemonade. Discovery may reveal additional products that also contain levels of Heavy Metals and reflect an inaccurate amount of Folic Acid than the amount depicted on the product label.  Plaintiff reserves her right to include any such products in this action.

.

CLASS ACTION COMPLAINT

**NATURE OF THE CASE**

## I.    INTRODUCTION

2.      The significance of prenatal health is underscored by the words of Ian Donald, the obstetrician who developed ultrasound diagnostics in Europe during the twentieth century, when he stated: "The first 38 weeks of life spent in the allegedly protected environment of the amniotic sac are medically more eventful and more fraught with danger than the next 38 years in the life span of most human individuals."[2]

3.      The importance of prenatal health has not gone unnoticed to expectant mothers or women who may become pregnant. And the prenatal vitamin market is capitalizing on the increased awareness.

4.      The North America Prenatal Vitamin market was valued at an estimated 200.47 million U.S. dollars ("**USD**") in the United States in 2020, and the market is expected to increase by almost USD 100 million in the next five years, reaching a market value of USD 293.6 million, by 2025.[3]

5.      The incredible rise in consumer demand for prenatal vitamins is due to "[t]he growing health awareness among pregnant women regarding proper diet."[4] Following a healthy

---

[2] Stephen J. Genuis, Rebecca A. Genuis, "Preconception Care: A New Standard of Care within Maternal Health Services", *BioMed Research International*, vol. 2016, Article ID 6150976, 30 pages, 2016. *Available at* https://doi.org/10.1155/2016/6150976 (last accessed January 3, 2022).

[3] North America Prenatal Vitamins Supplement Market, Market Data Forecast, *available at* https://www.marketdataforecast.com/market-reports/na-prenatal-vitamins-supplements-market (last accessed January 3, 2022) ("Vitamins Supplement Market Data Forecast").

[4] *Id.*

CLASS ACTION COMPLAINT

1   diet and taking a nutritious prenatal vitamin are important to supporting the growth of the fetus
2   and the mother's overall health.[5]

3   6.      The surge in sales of prenatal vitamins has also increased due to promotional
4   initiatives by the market vendors, like Defendant.[6] "Prenatal vitamin supplements are gaining
5   popularity in the market due to aggressive promotion and enhanced sales channels increasing
6   accessibility to the consumers."[7]

7   7.      Among the North America Prenatal Vitamins Supplements market, Folic Acid
8   supplements held the largest share of its market segment, a segment which also includes Iron,
9   Calcium, and Essential Fatty Acids.[8]
10

11  8.      Folic Acid, a synthetic form of Folate, the naturally occurring form of vitamin B9,
12  plays a critical role in supporting prenatal health.[9] Leading up to and during pregnancy, Folic Acid
13  helps prevent major birth defects of the brain and spine called neural tube defects ("**NTD**"), such
14  as spina bifida.[10] Due to the significance of Folic Acid during pregnancy, consumers, like Plaintiff,
15  read the product label to ensure its ingredients, including Folic Acid, provide the appropriate
16  nutrition to support their prenatal health.[11]
17

18

_____

19  [5] The American College of Obstetricians and Gynecologists, "Nutrition During Pregnancy FAQs,"
20  updated March 2021, *available at* https://www.acog.org/womens-health/faqs/nutrition-during-pregnancy (last accessed January 3, 2022) ("Nutrition During Pregnancy").

21  [6] *Vitamins Supplement Market Data Forecast, supra.*

22  [7] *Id.*

23  [8] *Id.*

24  [9] Healthline, "Folic Acid vs. Folate – What's the Difference?" *available at* https://www.healthline.com/nutrition/folic-acid-vs-folate#folate (last accessed October 18, 2021).

25  [10] *Nutrition During Pregnancy, supra.*

26  [11] In accordance with the Federal Rule for New Supplement Facts Labeling, companies like
27  Defendants now state on their label a "[Percentage] Daily Value for the total amount of Folate in a product, and if any of the total Folate comes from Folic Acid, that amount of Folic Acid is listed in mcg in parentheses." U.S. Food and Drug Administration, "Folate and Folic Acid on the
28

9.      Given the importance of prenatal vitamins to the mother's and baby's health, women like Plaintiff who are pregnant or who may become pregnant, trust Defendant to sell prenatal vitamins that are nutritious, nurturing of a healthy pregnancy, and are comparable to national brands, that are free from harmful toxins, contaminants, and chemicals, such as **Heavy Metals**,[12] and that contain the amount of ingredients, like Folic Acid, that are reflected on the product label.

10.     However, unbeknownst to women like Plaintiff, Defendant's Prenatal Vitamins contain, or risk containing, dangerous substances in the form of Heavy Metals and contain, or risk containing, less Folic Acid than is amount represented on the Product label.

## II.    HEAVY METALS

11.     Defendant fails to disclose the presence, or risk, of Heavy Metals in its Products.

12.     Consumers like Plaintiff expect the prenatal vitamins they consume to be free from Heavy Metals.

13.     Consumers like Plaintiff lack the scientific knowledge necessary to determine whether the Defendant's Products do in fact contain Heavy Metals or to know or ascertain the true nature of the ingredients and quality of the Products. Reasonable consumers therefore must and do rely on Defendant to honestly report what its Products contain, especially as it pertains to the disclosure of Heavy Metals.

14.     Exposure to Heavy Metals has significant and dangerous health consequences. A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer

---

Nutrition and Supplement Facts Labels," June 29, 2020, *available at* https://www.fda.gov/food/new-nutrition-facts-label/folate-and-folic-acid-nutrition-and-supplement-facts-labels (last accessed January 3, 2022).

[12] As used herein, "**Heavy Metals**" is collectively defined as Arsenic, Cadmium, Lead, and Mercury.

Policy, Committee on Oversight and Reform ("**Congressional Committee Report**") highlighted the risk of including Heavy Metals in baby food, spurred by the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development."[13]

15.     The risk of harm to babies exposed to Heavy Metals starts even before birth, when the baby is developing in-utero. If an expectant mother is taking a vitamin with Heavy Metals, those Heavy Metals will cross the placenta, contaminating the child's development and causing adverse health effects.[14] "The toxicological effects of heavy metals could alter the physiological changes during pregnancy, the critical phase of fetal cell division and differentiation."[15] Chronic low dose and consistent exposure to Heavy Metal toxicity to an infant during pregnancy can result in preterm delivery, stillbirth, or miscarriage.[16]

16.     Exposure to Heavy Metals during pregnancy may also lead to negative health outcomes in early childhood and beyond.[17] After birth, the Heavy Metal exposure can result in the

---

[13]U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, February 4, 2021, *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed January 3, 2022) ("Congressional Committee Report"). *See also* U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods," September 29, 2021, *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf (last accessed January 9, 2022).

[14] Wai, K. M., Mar, O., Kosaka, S., Umemura, M., & Watanabe, C. (2017). Prenatal Heavy Metal Exposure and Adverse Birth Outcomes in Myanmar: A Birth-Cohort Study. *International journal of environmental research and public health*, *14*(11), 1339. *Available at* https://doi.org/10.3390/ijerph14111339 (last accessed January 3, 2022).

[15] *Id.*

[16] *Id.*

[17] *Id.*

CLASS ACTION COMPLAINT

child developing behavioral and neurocognitive conditions including autism or Attention-Deficit/Hyperactivity Disorder ("**ADHD**").[18]

17.     Provided the risk of harm to a child in-utero from Heavy Metal exposure, Defendant knows that its customers trust the quality of their products and that its customers expect Defendant's products to be free of Heavy Metals. Defendant also knows that certain consumers seek out and wish to purchase prenatal vitamins that possess high quality ingredients free of toxins, contaminants, or chemicals. Additionally, Defendant knows that these consumers will pay the price premium for prenatal vitamins they believe possess these qualities.

18.     As such, Defendant's promises, warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising (hereinafter collectively referred to as "**Marketing**" or "**Claims**") center on representations that are intended to, and do, convey to consumers that its prenatal vitamins, including its  Prenatal Vitamins, possess certain qualities and characteristics that support a mother's and developing baby's health.

19.     No reasonable consumer seeing Defendant's Marketing would expect the Prenatal Vitamins to contain or risk containing Heavy Metals. Furthermore, reasonable consumers, like Plaintiff, would consider the mere inclusion, or risk of inclusion, of Heavy Metals a material fact when shopping for a nutritious prenatal vitamin.

20.     Defendant intended for consumers to rely on its Marketing, and reasonable consumers did in fact so rely. However, Defendant's Marketing is deceptive, misleading, unfair, and/or false because, among other things, the Prenatal Vitamins include or risk including undisclosed Heavy Metals.

---

[18] ADHD and Autism Associated with In-Utero Heavy Metals and Essential Minerals, NeuroscienceNews.com, April 9, 2021, *available at* https://neurosciencenews.com/asd-adhd-heavy-metals-18207/ (last accessed January 3, 2022).

CLASS ACTION COMPLAINT

21.     Defendant's Prenatal Vitamins do not have a disclaimer regarding the presence of Heavy Metals that would inform consumers that the Products contain, or risk containing, Heavy Metals and/or that Heavy Metals can accumulate over time in a developing child's body to the point where negative health outcomes can occur.

### III.   FOLIC ACID

22.     Defendant misrepresents the amount of Folic Acid in its Prenatal Vitamins.

23.     Consumers like Plaintiff expect that when a prenatal vitamin states that it contains a certain amount of a nutrient, especially one as important to prenatal health as Folic Acid, that the prenatal vitamin actually contains the amount stated on the Product label.

24.     Consumers lack the scientific knowledge necessary to determine whether the Defendant's Products do in fact contain the actual amount of Folic Acid that is stated on the label, or to know or ascertain the true amount of Folic Acid in the Products. Reasonable consumers therefore must and do rely on Defendant to honestly report the amount of Folic Acid its Products contain.

25.     Folic Acid is critical to the health of women who are pregnant or may become pregnant. Folic Acid helps prevent babies from developing NTDs, including spina bifida.[19]

26.     Given the critical role of Folic Acid to the health of women like Plaintiff who are pregnant or may become pregnant, Defendant knows that its customers trust the quality of its Products and that they expect Defendant's Products to provide the amount of Folic Acid that is presented on its Products' labels.

---

[19] U.S. Department of Health & Human Services, Office on Women's Health, "Folic Acid," last updated April 1, 2019, *available at* https://www.womenshealth.gov/a-z-topics/folic-acid#:~:text=If%20you%20do%20not%20get%20enough%20folic%20acid%20before%20and,Spina%20bifida (last accessed January 3, 2022) ("Health & Human Services, Folic Acid").

CLASS ACTION COMPLAINT

27.     As such, Defendant's Marketing centers on representations that are intended to, and do, represent to consumers that its Prenatal Vitamins contain an amount of Folic Acid that justify a consumer paying a price premium for its Products.

28.     No reasonable consumer seeing Defendant's Marketing would expect the Prenatal Vitamins to contain, or have the risk of containing, less Folic Acid than the amount represented on the label.

29.     Reasonable consumers would consider the risk of deficiency in the amount of Folic Acid a material fact when considering what prenatal vitamins to purchase.

30.     Defendant intended for consumers to rely on its Marketing, and reasonable consumers did in fact so rely. However, Defendant's Marketing is deceptive, misleading, unfair, and/or false because, among other things, the Prenatal Vitamins contained, or had a risk of containing, less Folic Acid than the amount stated on the label.

31.     Contrary to the express representations made on its labels, Defendant's Prenatal Vitamins provided or risked providing less Folic Acid than the amount stated on the label.

## IV.  DEFENDANT'S MISMARKETING OF ITS PRENATAL VITAMINS IS THE BASIS FOR THIS ACTION

32.     Defendant's wrongful Marketing, which includes misleading, deceptive, unfair, and false Marketing and omissions, allowed it to capitalize on, and reap enormous profits from, consumers who paid the price premium for Prenatal Vitamins that were not sold as advertised. Defendant continues to wrongfully induce consumers to purchase its Prenatal Vitamins that are not as advertised.

33.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up

to and including the present, purchased for use and not resale any of Defendant's Prenatal Vitamins.

## JURISDICTION AND VENUE

34.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act of 2005 ("**CAFA**"), 28 U.S.C. §1332(d) for the following reasons: (a) some of the class members are citizens of a state that is different from the citizenship of the Defendant; (b) the putative class size is greater than 100 persons; (c) the amount in controversy in the aggregate for the putative class exceeds the sum of $5 million, exclusive of interest and costs; and (d) the primary defendants do not include States, State officials, and/or other governmental entities against whom the district court may be foreclosed from ordering relief.

35.     This Court has original jurisdiction over this action under CAFA, 28 U.S.C. §1332(d), because, upon information and belief, no other class action has been filed asserting the same or similar factual allegations against the defendants on behalf of the same or other persons during the 3-year period preceding the filing of this class action.

**General Personal Jurisdiction**

36.     This Court has personal jurisdiction over Plaintiff, Lauren Goodwin-Koenig, who is a resident of the State of California.

37.     This Court has both general and specific personal jurisdiction over the Defendant, Target Corporation.

38.     This Court has general personal jurisdiction over Defendant, Target Corporation, because Defendant is registered to conduct business in California.

39.     This Court has general personal jurisdiction over Defendant, Target Corporation, because the Defendant advertises, markets, and sells its parental vitamin products in California, accepts money from purchasers located in California, has engaged in systematic and continuous

business activities in California, transacted substantial business with California entities and residents, and generally has sufficient minimum contacts in California to satisfy the Due Process Clause of the California Constitution and California's Long Arm Statute pursuant to California Code of Civil Procedure §410.10.

**Specific Personal Jurisdiction**

40.     This Court has specific personal jurisdiction over Defendant arising from Defendant's advertising, Marketing, and sale of Up & Up prenatal vitamin products in California, which at all relevant times, included or risked including dangerous substances and misrepresented the amount of Folic Acid, all of which have caused harm in California as a result of the specific business activities complained of herein, either directly or through Defendant's agents.

41.     This Court has specific personal jurisdiction over Defendant because the advertising, Marketing, and sale of Up & Up prenatal vitamin products, which included or risked including dangerous substances and misrepresented the amount of Folic Acid, occurred in parts of California that are located in the Eastern District of California.

42.     Venue is proper in the Eastern District of California pursuant to 28 U.S.C. §1391(b)(2), because Plaintiff Lauren Goodwin-Koenig resides in the Eastern District of California, and ingested the Up & Up prenatal vitamin products at issue within the confines of this District.

43.     Venue is proper in the Eastern District of California under 28 U.S.C. §1391(b)(1)&(2) and 28 USC §1391(d) because Defendant regularly conducts substantial business within the Eastern District of California.

44.     Venue is also proper in the Eastern District of California under 28 U.S.C. §1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this District, namely Defendant's advertisement, sale, and Marketing of Up &

Up prenatal vitamin products, which occurred in this District and caused financial harm to members of the putative class that reside in this District.

## THE PARTIES

45.     Plaintiff Lauren Goodwin-Koenig is, and at all times relevant hereto has been, a citizen of Rosamond, California, located in the County of Kern.  She purchased the Prenatal Vitamins, specifically the Up & Up Prenatal Gummies, for herself at Defendant's store in Lancaster, California.  Plaintiff purchased the Prenatal Vitamins from January 2019 until May of 2020.

46.     During the time Plaintiff purchased and took the Prenatal Vitamins, and due to the false and misleading claims and omissions by Defendant, Plaintiff believed she was taking prenatal vitamins to give her body the nutrients needed for a healthy pregnancy. Plaintiff was unaware the Prenatal Vitamins contained, or had a risk of containing, undisclosed levels of Heavy Metals. Plaintiff also believed the Prenatal Vitamins contained the amount of Folic Acid that was stated on the Product label. Plaintiff would not have purchased the Products if the levels of Heavy Metals and amount of Folic Acid had been fully and accurately disclosed and represented.

47.     As the result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the price premium for the Prenatal Vitamins that did not deliver what they promised.  She paid the price premium on the assumption that the labeling of the Prenatal Vitamins was accurate, that they did not contain or have a risk of containing undisclosed levels of Heavy Metals and were safe to ingest, and that they contained the amount of Folic Acid promised on the label. Plaintiff would not have paid this money had she known that the Prenatal Vitamins contained levels of Heavy Metals and a deficient amount of Folic Acid as compared to the amount stated on the Product label.  Further, should Plaintiff encounter the Prenatal Vitamins in the future, she could not rely on the truthfulness of the Marketing, absent

CLASS ACTION COMPLAINT

corrective changes to the packaging, labeling, and advertising of the Products. Damages can be calculated through expert testimony at trial.

48.     Defendant Target Corporation is incorporated under the laws of the state of Minnesota. Defendant's corporate headquarters is located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant is responsible for the Marketing, distribution, and sale of the Prenatal Vitamins under the Up & Up name to millions of consumers throughout the United States, including this District.  Defendant created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Prenatal Vitamins.

49.     The Marketing for the Prenatal Vitamins, relied upon by Plaintiff, was disseminated throughout the United States, including this District, by Defendant and its agents through advertising, packaging, and labeling that contained the misrepresentations and omissions alleged herein.  The Marketing for the Prenatal Vitamins was designed to encourage consumers, and reasonably misled consumers, into purchasing the Products throughout the United States, including this District.

50.     Defendant manufactures, markets, advertises, packages, and labels several prenatal vitamin products. Defendant's Prenatal Vitamins include, but are not limited to:[20]

---

[20] As stated *supra*, discovery may reveal additional products that also contain levels of Heavy Metals and reflect an inaccurate amount of Folic Acid than the amount depicted on the product label.  Plaintiff reserves her right to include any such products in this action.

CLASS ACTION COMPLAINT

1

(a)      Up & Up Prenatal Multivitamin:

2

3

4

5

6

7

8

9

10

11

12

13



14

(b)      Up & Up Prenatal Vitamins:

15

16

17

18

19

20

21

22

23

24

25

     

26

27

28

CLASS ACTION COMPLAINT

(c)   Up & Up Prenatal Multivitamin Gummies – Lemon & Raspberry Lemonade:



**FACTUAL ALLEGATIONS**

**I.   DEFENDANT'S MARKETING PRACTICES EMPHASIZED ITS PRENATAL VITAMINS AS A GENERIC STORE BRAND THAT HOLDS ITS OWN AGAINST NATIONAL NAME BRANDS**

51.   Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its products, including its Prenatal Vitamins, throughout this District and the United States, and its products are widely advertised and available at numerous retail and online outlets. Defendant's Marketing promotes its Products as a generic store brand that holds its own against national name brands.

**CLASS ACTION COMPLAINT**

52.    Defendant's  Prenatal Vitamins are advertised with the Up & Up brand to reflect and imply that consumers would receive a prenatal vitamin that is comparable to national name brands that provide essential vitamins and minerals to support a healthy pregnancy.

53.    Defendant's Prenatal Vitamins are advertised, marketed and sold as to compare to name brand prenatal vitamins, for example, "Compare to vitafusion™ PreNatal" or "Stuart Prenatal®" or "Compare to One A Day® Women's Prenatal" or "Compare to One A Day® Women's Prenatal 1."




CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

 

17     54.     Despite these representations, on information and belief, there are no reliable

18   studies that support Defendant's representations.

19     55.     By making this representation and by comparing its less expensive in-house private

20   label product to the national known brands' more expensive prenatal vitamins, Defendant misleads

21   consumers into believing its Prenatal Vitamins are as effective as name brands and can therefore

22   promote a healthy pregnancy.

23

24     56.     These misrepresentations allow Defendant to unlawfully increase its sales and have

25   an economic edge over its competitors in the marketplace.

26
27
28

CLASS ACTION COMPLAINT

57.     With Defendant's highlighting of its Products "essential" and "necessary" nutrients, Defendant clearly recognizes the importance of its Prenatal Vitamins to the healthy development of a baby in-utero, including a woman's preparation to foster such development.

**II.     DEFENDANT HAD EXCLUSIVE KNOWLEDGE OF THE PHYSICAL AND CHEMICAL MAKE-UP OF ITS PRENATAL VITAMINS**

58.     Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Prenatal Vitamins.

59.     The Prenatal Vitamins are advertised, marketed and sold as Products that are to be used and provides nutrients "before, during and after pregnancy."



**CLASS ACTION COMPLAINT**

60.     On its website, Defendant declares that its Prenatal Vitamins support a healthy pregnancy with "essential nutrients"[21] and "necessary nutrients."[22]

61.     By way of Defendant's marketed inclusion of "essential" and "necessary" nutrients in its Prenatal Vitamins, Defendant represents the importance and accuracy of the quality of ingredients in the Prenatal Vitamins, as well as the quantity of ingredients on the Product label(s), as it relates to the healthy development of a baby in-utero, including a woman's preparation to foster such development.

## III.     DEFENDANT FAILS TO DISCLOSE THE PRESENCE OR RISK OF HEAVY METALS IN ITS PRENATAL VITAMINS

### A.     Defendant Falsely Marketed its Prenatal Vitamins by Omitting the Inclusion or Risk of Heavy Metals

62.     Defendant promotes its Prenatal Vitamins as comparable to national prenatal vitamin name brands, including One A Day®.

 

---

[21]https://www.target.com/p/prenatal-vitamin-dietary-supplement-tablets-up-up/-/A-16292263 (last accessed January 5, 2022).

[22]https://www.target.com/p/prenatal-multivitamin-gummies-fruit-flavors-90ct-up-38-up-8482/-/A-13579345#lnk=sametab (last accessed January 5, 2022); and https://www.target.com/p/women-39-s-daily-prenatal-combo-pack-dietary-supplement-tablets-38-softgels-60ct-up-38-up-8482/-/A-11868347#lnk=sametab (last accessed January 5, 2022).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

63.     Defendant markets its Products with images of a pregnant woman, touting its Products support for "reproductive health," and stating on its website that its Prenatal Vitamins promote a healthy pregnancy with "essential nutrients" [23] and "necessary nutrients." [24]



---

[23]https://www.target.com/p/prenatal-vitamin-dietary-supplement-tablets-up-up/-/A-16292263 (last accessed January 5, 2022).

[24]https://www.target.com/p/prenatal-multivitamin-gummies-fruit-flavors-90ct-up-38-up-8482/-/A-13579345#lnk=sametab (last accessed January 5, 2022); and https://www.target.com/p/women-39-s-daily-prenatal-combo-pack-dietary-supplement-tablets-38-softgels-60ct-up-38-up-8482/-/A-11868347#lnk=sametab (last accessed January 5, 2022).



64.     Defendant markets its Products as "complete" with "nutrients that matter to mom and baby."

**DO NOT USE IF PRINTED SEAL UNDER CAP IS BROKEN OR MISSING**

**A complete multivitamin with nutrients that matter to mom and baby**

Supplies important nutrients a woman's body needs before, during and after pregnancy.**

This product includes a complete multivitamin tablet with key nutrients such as folic acid and iron.

This product also includes a DHA/EPA softgel.

**Complete prenatal multivitamin and DHA:**

• Adequate folate in healthful diets may reduce a woman's risk of having a child with a brain or spinal cord birth defect

• Iron requirements are greater for pregnant women than nonpregnant women

• DHA may help support healthy fetal brain and eye development during pregnancy**

GLUTEN FREE

**100% satisfaction guaranteed or your money back.**

†One A Day® is a registered trademark of Bayer HealthCare LLC.

**THESE STATEMENTS HAVE NOT BEEN EVALUATED BY THE FOOD AND DRUG ADMINISTRATION. THIS PRODUCT IS NOT INTENDED TO DIAGNOSE, TREAT, CURE OR PREVENT ANY DISEASE.**

204009/518829/518526/TAR801684

65.     Based on Defendant's decision to advertise, label, and market its Prenatal Vitamins as nutritious and nurturing of a healthy pregnancy, consistent with national name brands, Defendant had a duty to ensure that these statements were true and not misleading. As such, Defendant knew or should have known that its Prenatal Vitamins included or risked including nondisclosed levels of Heavy Metals, especially considering Defendant's statements on its website, labels, and packaging.

66.     Defendant's Marketing of its Products failed to disclose they contained or were at risk of containing any level of Heavy Metals.

67.     Defendant intentionally omitted the inclusion of Heavy Metals in its Products in order to induce and mislead reasonable consumers to purchase its Prenatal Vitamins.

68.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence, or risk, of undisclosed levels of Heavy Metals in its Products without conducting his or her own scientific tests or reviewing third party scientific testing of the Products.

**B.     Due to the Presence of Heavy Metals in its Prenatal Vitamins, Defendant's Marketing and Omissions are Misleading**

69.     At all times during the Class Period, Defendant knew or should have known its Prenatal Vitamins contained, or risked containing, Heavy Metals.

70.     Plaintiff, through counsel, submitted a Freedom of Information Act ("**FOIA**") request to the Food and Drug Administration ("**FDA**") on March 8, 2021 asking for any test results or any records related to the levels of Folic Acid or Heavy Metals in Up & Up prenatal vitamins. On July 28, 2021, the FDA responded that it was unable to locate any records in response to the request.

71.     Defendant's Prenatal Vitamins contained or had a risk of containing Heavy Metals. Defendant was aware of this risk due to its promotion of the critical role of its nutrients in its

CLASS ACTION COMPLAINT

Products to support a healthy pregnancy and Defendant failed to disclose it to Plaintiff and the Class.

72.     Defendant knew or should have known that Heavy Metals are potentially dangerous contaminants that pose health risks to humans, especially to women who are pregnant or may become pregnant and developing babies.

73.     Heavy Metal exposure can lead to catastrophic health consequences in a developing baby. The fetal development period from conception until birth is a phase of life that carries particular vulnerability to toxic exposure, including Heavy Metals, as developing babies have an immature detoxification capability.[25] Due to this vulnerable state, during this critical period, a child may amass higher levels of Heavy Metals and thus experience higher levels of toxic exposure than their mothers.[26] This exposure may lead to adverse consequences in pregnancy and the in-utero baby, including premature delivery, and the baby having a decreased birth weight, as well as smaller head and chest circumference, and a multitude of developmental and long-term health problems.[27] Prenatal exposure to Heavy Metals also negatively affects a child's neurodevelopment and may contribute to schizophrenia and dementia in adulthood.[28]

74.     Defendant knew or should have known it owed consumers a duty of care to prevent the presence or risk of Heavy Metals in its Prenatal Vitamins to the extent reasonably possible.

75.     Defendant knew or should have known it owed consumers a duty of care to disclose the presence, or risk, of Heavy Metals in its Prenatal Vitamins.

---

[25]Heavy metal contamination of prenatal vitamins, *available at* https://www.sciencedirect.com/science/article/pii/S2214750018301215?via%3Dihub (last accessed January 3, 2022) ("Heavy Metal Contamination of Prenatal Vitamins").

[26] *Id.*

[27] *Id.*

[28] *Id.*

CLASS ACTION COMPLAINT

76.     Defendant knew or should have known consumers purchased its Prenatal Vitamins based on the reasonable expectation that Defendant manufactured the Products to be comparable to national prenatal vitamin name brands. Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the Prenatal Vitamins to the highest standards for preventing the inclusion of Heavy Metals in its Products and for testing for Heavy Metals in the Prenatal Vitamins' ingredients as well as the final Products.

***Heavy Metal Ingredient: Arsenic***

77.     Defendant's Prenatal Vitamins contain, or risk containing, Arsenic, which can cause cancer in humans, as well as diabetes and atherosclerosis, and potentially cardiovascular disease when ingested chronically.[29] Chronic exposure to Arsenic has also been associated with dermatological lesions and malignancies.[30]

78.     For children specifically, the World Health Organization ("**WHO**") has found that prenatal exposure to Arsenic through placental transfer, "can cause marked damage to the fetus[]" and increases the risk of detrimental effects throughout early childhood.[31] Exposure to Arsenic in-utero "has recently been associated with impact on genetic homeostasis with resulting inflammation and atherosclerotic disease adults."[32] Inorganic Arsenic exposure in-utero is also

---

[29] States JC, Singh AV, Knudsen TB, Rouchka EC, Ngalame NO, Arteel GE, et al. (2012) Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis. PLoS ONE 7(6): e38713. *Available at* https://doi.org/10.1371/journal.pone.0038713 (last accessed January 3, 2022) ("Prenatal Arsenic Exposure").

[30] Genuis SJ, Schwalfenberg G, Siy A-KJ, Rodushkin I (2012) Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations. PLOS ONE 7(11): e49676. *Available at* https://doi.org/10.1371/journal.pone.0049676 (last accessed January 3, 2022) ("Toxic Element Contamination of Natural Health Products").

[31] WHO, Adverse Health Effects of Heavy Metals in Children, *available at* https://www.who.int/ceh/capacity/heavy_metals.pdf (last accessed January 3, 2022).

[32] *Heavy metal contamination of prenatal vitamins, supra.*

linked to "impaired intellectual development, such as decreased performance on certain developmental tests that measure learning."[33] A developing baby's exposure to Arsenic also contributes to cardiovascular disease later in life.[34]

79.    Exposure cannot be undone, as "[t]here is no evidence that the harm caused by arsenic is reversible."[35] Moreover, Arsenic exposure may increase the mother's risk of nausea and vomiting during pregnancy, which may decrease maternal weight gain and lead to poor maternal nutrition.[36] A woman's blood Arsenic was also associated with decreased fetal growth.[37]

80.    Based on the risks associated with exposure to higher level of Arsenic, both the U.S. Environmental Protection Agency ("**EPA**") and FDA have set limits concerning the allowable limit of Arsenic at 10 parts per billion ("**ppb**") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA as a maximum contaminant level). [38] The FDA has also set the maximum allowable levels in bottled water at 10 ppb of inorganic Arsenic.[39]

---

[33] U.S. Food and Drug Administration, "Arsenic in Food and Dietary Supplements," current as of August 5, 2020, *available at* https://www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements (last accessed January 3, 2022) ("Arsenic in Supplements").

[34] *Prenatal Arsenic Exposure, supra.*

[35] Healthy Babies Bright Futures Report, What's in My Baby's Food, at 3, *available at* https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed January 3, 2022) ("Healthy Babies Bright Futures Report").

[36] Estimating Effects of Arsenic Exposure During Pregnancy on Perinatal Outcomes in a Bangladeshi Cohort, Epidemiology, 2016 Mar; 27(2); 173-181, published online 2016 Feb 2, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4733817/ (last accessed January 3, 2022) ("Estimating Effects of Arsenic Exposure During Pregnancy").

[37] Claus Henn, B., Ettinger, A. S., Hopkins, M. R., Jim, R., Amarasiriwardena, C., Christiani, D. C., Coull, B. A., Bellinger, D. C., & Wright, R. O. (2016). Prenatal Arsenic Exposure and Birth Outcomes among a Population Residing near a Mining-Related Superfund Site. *Environmental health perspectives*, *124*(8), 1308–1315. *Available at* https://doi.org/10.1289/ehp.1510070 (last accessed January 3, 2022) ("Prenatal Exposure and Birth Outcomes").

[38] *Arsenic in Supplements, supra.*

[39] *Id.*

CLASS ACTION COMPLAINT

81.     Although the FDA has not set the action level for Arsenic in prenatal supplements specifically, "the FDA prioritizes monitoring and regulating products that are more likely to be consumed by very young children."[40] In that vein, the FDA issued guidance limiting the action level for Arsenic in infant rice cereals to 100 ppb.[41]

82.     Notwithstanding the establishment of action levels, Arsenic exposure may result in adverse outcomes during pregnancy and in the developing child.[42]

***Heavy Metal Ingredient: Cadmium***

83.     Defendant's Prenatal Vitamins contain, or risk containing, Cadmium, which is linked to neurotoxicity, cancer, and kidney, bone, and heart damage.[43] Moreover, the U.S. Department of Health and Human Services ("**HHS**") has determined that Cadmium is a probable human carcinogen.[44]

84.     Cadmium exposure during pregnancy can lead to detrimental outcomes. "Maternal exposure to [cadmium] has been associated with the delivery of low-birth weight babies and an increase incidence of spontaneous abortion."[45] Cadmium may displace zinc, which is essential for normal fetal growth and development as well as maternal health during pregnancy.[46]

---

[40] *Id.*

[41] *Id.*

[42] *Heavy metal contamination of prenatal vitamins, supra.*

[43] Genchi, G., Sinicropi, M.S., Lauria, G., Carocci, A., & Catalano, A., "The Effects of Cadmium Toxicity," International Journal of Environmental Research and Public Health, Review,  Published May 26, 2020, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7312803/#:~:text=Cadmium%20accumulates%20in%20plants%20and,%2C%20pancreas%2C%20and%20kidney%20cancers (last accessed January 3, 2022).

[44] Agency for Toxic Substances and Disease Registry, Public Health Statement, "Cadmium," (Sept. 2012), *available at* https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15 (last accessed January 3, 2022).

[45] *Id.*

[46] *Id.*

CLASS ACTION COMPLAINT

85.     Cadmium may seriously affect the morbidity and mortality of newborns in the first four weeks of their lives with far-reaching health consequences.[47] Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]"[48] Cadmium is also associated with decreases in IQ[49] and the development of ADHD.[50] Compounding the concern is that Cadmium has a prolonged half-life as it sequesters in body tissue.[51]

86.     Although the FDA has not set the maximum contaminant level for Cadmium in prenatal vitamins, the EPA has set a maximum contaminant level for Cadmium in drinking water of 5 ppb, 40 C.F.R. §141.62; the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[52] Regardless, Cadmium, like Lead, "displays a troubling ability to cause harm at low levels of exposure."[53]

---

[47] Ikeh-Tawari, E. P., Anetor, J. I., & Charles-Davies, M. A. (2013). Cadmium level in pregnancy, influence on neonatal birth weight and possible amelioration by some essential trace elements. *Toxicology international*, *20*(1), 108–112. *Available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3702118/ (last accessed January 3, 2022).

[48] *Healthy Babies Bright Futures Report at 14, supra.*

[49] "Cadmium exposure and cognitive abilities and behavior at 10 years of age: A prospective cohort study," Environment International, Vol. 113, April 2018, Pps. 259-268 *available at* https://www.sciencedirect.com/science/article/pii/S0160412017321025 (last accessed January 3, 2022).

[50] Lee, M. J., Chou, M. C., Chou, W. J., Huang, C. W., Kuo, H. C., Lee, S. Y., & Wang, L. J. (2018). Heavy Metals' Effect on Susceptibility to Attention-Deficit/Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony. *International journal of environmental research and public health*, *15*(6), 1221. *Available at* https://doi.org/10.3390/ijerph15061221 (last accessed January 3, 2022).

[51] *Toxic Element Contamination of Natural Health Products, supra.*

[52] *Congressional Committee Report*, *supra*, at 29.

[53] *Healthy Babies Bright Futures Report* at 14*, supra.*

*Heavy Metal Ingredient: Lead*

87. Defendant's Prenatal Vitamins contain, or risk containing, Lead, which is a probable carcinogen[54] and developmental toxin known to cause health problems to children in-utero.[55] The Centers for Disease Control and Prevention ("**CDC**") reported that exposure to Lead in-utero can negatively affect the development of a baby's nervous system, decrease a baby's growth, and increase the risk for a baby being born premature and miscarriage.[56]

88. Prenatal Lead exposure can seriously harm a baby's neurodevelopment, and is associated with a range of negative health outcomes such as schizophrenia and dementia, decreased cognitive performance, and reduced postnatal growth.[57] Prenatal exposures to the highest and lowest levels of Lead were linked to a heightened risk of autism spectrum diagnosis in children.[58] Additionally, studies have established a link between Lead exposure and ADHD.[59]

89. Prenatal Lead exposure is also linked to an increased risk of a preterm birth and reduced postnatal development.[60] Maternal Lead exposure may also contribute to the baby developing certain types of congenital heart disease.[61]

---

[54]American Cancer Society, "Known and Probable Carcinogens," Last Revised August 14, 2019, *available at* https://www.cancer.org/cancer/cancer-causes/general-info/known-and-probable-human-carcinogens.html (last accessed January 3, 2022).

[55] *Heavy metal contamination of prenatal vitamins, supra.*

[56] CDC, Guidelines for the Identification and Management of Lead Exposure in Pregnant and Lactating Women, *available at* https://www.cdc.gov/nceh/lead/publications/leadandpregnancy2010.pdf (last accessed October 18, 2021) ("Lead Exposure in Pregnant and Lactating Women").

[57] *Heavy metal contamination of prenatal vitamins, supra.*

[58] "ADHD and Autism Associated with In-Utero Heavy Metals and Essential Minerals," Neuroscience News, April 9, 2021, *available at* https://neurosciencenews.com/asd-adhd-heavy-metals-18207/ (last accessed October 18, 2021).

[59] *Congressional Committee Report, supra.*

[60] *Heavy metal contamination of prenatal vitamins, supra.*

[61] *Id.*

CLASS ACTION COMPLAINT

90.    Due to the danger of Lead exposure, maximum Lead levels are required for certain consumer products:

(a)    Drinking Water. On January 15, 2021, the EPA issued Lead and Copper Rule Revisions, with a new "trigger level" for treatment of 10 ppb lead in drinking water, effective March 16, 2021. 86 F.R. 28691 (Jan. 15, 2021). The previous level had been 15 ppb. 40 C.F.R. §141, Subpart I.

(b)    Bottled Water. The FDA requires that bottled water cannot contain more than 5 ppb of total Lead.  21 C.F.R. §165.110(b)(4)(iii)(A).

(c)    Infant Formula. The European Union has set the maximum Lead level in infant formula to 20 ppb.

91.    Although no federal standard for Lead in prenatal vitamins has been established,[62] there is no known "safe" level of Lead exposure.[63] Prenatal children are at risk of developing behavior and cognitive function impairments due to exposure to Lead at levels far lower than those identified as "safe."[64]

---

[62] *FDA Survey Data on Lead in Women's and Children's Vitamins, supra* (although no federal standard for Lead exposure has been established, the FDA determined a provisional total tolerable intake level (PTTI) of 25 μg of lead per day for pregnant or lactating women). California's Proposition 65 and U.S. Pharmacopeia limits are 0.5 μgm/day.

[63] *Heavy metal contamination of prenatal vitamins, supra.*

[64] *Id.*

***Heavy Metal Ingredient: Mercury***

92.     Defendant's Prenatal Vitamins contain, or risk containing, Mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in-utero.[65]

93.     Developing fetuses are exceptionally vulnerable to Mercury exposure.[66] In a pregnant woman, Mercury can easily pass through the placenta and accumulate in the fetus as the fetus cannot excrete Mercury.[67] This lack of self-defense leaves a baby in-utero exposed to Mercury that may result in decreased placental and fetal development,[68] and permanent damage to the nervous system.[69]

94.     Although there is no maximum contaminant level for Mercury in prenatal vitamins, the EPA has set a maximum contaminant level for Mercury in drinking water at 2 ppb.[70] However, "there is no known safe level" of exposure to Mercury as it is a "highly toxic element."[71]

95.     The four Heavy Metals – Arsenic, Cadmium, Lead, and Mercury – are significant detriments to children, especially during the gestational period.[72] Of additional concern to

---

[65] Current Problems in Pediatric Adolescent Health Care, "Mercury Exposure and Children's Health," 2010 Sept., *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3096006/ (last accessed October 18, 2021) ("Mercury Exposure and Children's Health").

[66] *Id.*

[67] *Id.*

[68] Prenatal mercury exposure and birth outcomes, *available at* https://www.sciencedirect.com/science/article/abs/pii/S0013935116302857 (last accessed January 3, 2022) ("Prenatal Mercury Exposure and Birth Outcomes").

[69] *Mercury Exposure and Children's Health, supra.*

[70] *Congressional Committee Report, supra.*

[71] *Mercury Exposure and Children's Health, supra.*

[72] *Heavy metal contamination of prenatal vitamins, supra.*

developing babies are the health risks due to exposure to multiple Heavy Metals simultaneously, as "co-exposures can have interactive adverse effects."[73]

96.     Understanding the detriment that exposure to Heavy Metals can create, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group, which is aimed toward reducing human exposure to contaminants in dietary supplements, food and cosmetics.[74]

97.     Despite the known risks of exposure to these Heavy Metals, Defendant has negligently, recklessly, and/or knowingly sold its Prenatal Vitamins without disclosing they may contain levels of Arsenic, Cadmium, Lead, and Mercury to consumers like Plaintiff.

98.     Based on the foregoing, reasonable consumers, like Plaintiff, would consider the inclusion, or risk of inclusion, of Heavy Metals a material fact when considering what prenatal vitamin to purchase.

99.     Defendant knew that monitoring for Heavy Metals in its ingredients and Prenatal Vitamins was not only important but critical.

100.    Defendant also knew that monitoring Heavy Metals was likewise important to its health-conscious consumers.

---

[73] Morello-Frosch R, Cushing LJ, Jesdale BM, Schwartz JM, Guo W, Guo T, Wang M, Harwani S, Petropoulou SE, Duong W, Park JS, Petreas M, Gajek R, Alvaran J, She J, Dobraca D, Das R, Woodruff TJ. Environmental Chemicals in an Urban Population of Pregnant Women and Their Newborns from San Francisco. Environ Sci Technol. 2016 Nov 15;50(22):12464-12472. doi: 10.1021/acs.est.6b03492. Epub 2016 Oct 26. PMID: 27700069; PMCID: PMC6681912. *Available at* https://stacks.cdc.gov/view/cdc/80511 (last accessed January 3, 2022).

[74] FDA, "Metals and Your Food," Current as of April 8, 2021, *available at* https://www.fda.gov/food/chemicals-metals-pesticides-food/metals-and-your-food (last accessed January 3, 2022).

CLASS ACTION COMPLAINT

101.     Finally, Defendant knew or should have known it could control the levels of Heavy Metals in the Prenatal Vitamins by adequately monitoring its ingredients for Heavy Metals and adjusting any formulation to reduce ingredients that contained higher levels of Heavy Metals.

102.     Defendant also knew it was not monitoring and testing for Heavy Metals in the Prenatal Vitamins. Defendant knew its failure to test for Heavy Metals in the Prenatal Vitamins continued throughout the Class Period.

103.     Defendant's Marketing was misleading due to its failure to properly and sufficiently monitor for Heavy Metals and for failure to disclose the risk of the presence of Heavy Metals in its Prenatal Vitamins.

104.     Defendant knew or should have known consumers paid the price premium and expected Defendant to test and monitor for Heavy Metals and disclose the risk or presence of Heavy Metals in its Prenatal Vitamins and ingredients.

105.     At all times during the Class Period, Defendant did not monitor or test for Heavy Metals in its Prenatal Vitamins and ingredients and Defendant did not disclose the presence or risk of Heavy Metals in its Products.

106.     Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of Heavy Metals in its Prenatal Vitamins and ingredients, and to disclose the presence or risk of any levels of Heavy Metals in its Products.

107.     Defendant knew or should have known its Prenatal Vitamins contained or risked containing Heavy Metals that were inconsistent with its Marketing.

108.     Defendant knew or should have known that, in order to comply with its Marketing, consumers expected them to ensure its Prenatal Vitamins were monitored and tested for Heavy Metals, and to disclose the presence or risk of Heavy Metals.

CLASS ACTION COMPLAINT

109.     Defendant knew, yet failed to disclose, its lack of testing and knowledge of the risk or presence of Heavy Metals in its Prenatal Vitamins ingredients.

110.     Defendant's above-referenced statements, representations, and omissions are false, misleading, and crafted to deceive the public as they create an image that its Prenatal Vitamins are nutritious and free of Heavy Metals.

111.     Moreover, reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt Defendant's statements regarding the quality of its Prenatal Vitamins. Defendant's nondisclosure and/or concealment of the presence or risk of Heavy Metals in the Prenatal Vitamins coupled with the misrepresentations alleged herein that were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class, to purchase Products they would not have if the true quality and ingredients were disclosed.

**C.     Defendant's Marketing Misled and Deceived Consumers to Believe that its Prenatal Vitamins Do Not Contain or Risk Containing Heavy Metals**

112.     Defendant's Marketing wrongfully represents to consumers that its Prenatal Vitamins have certain superior quality and characteristics that they do not actually possess.

113.     Although Defendant misleadingly caused consumers to believe its Prenatal Vitamins do not contain Heavy Metals through its Marketing and omissions, the Products do in fact contain or risk containing undisclosed Heavy Metals, which is material information to reasonable consumers.

114.     Plaintiff's counsel had Defendant's Prenatal Vitamins tested and that testing confirmed that each of Defendant's Prenatal Vitamins that were tested contained undisclosed Heavy Metals.

115.     The highest levels of Arsenic were 644.12 ppb in the Up & Up Prenatal Multivitamin (60 count).

116.    The highest levels of Cadmium were 173.18 ppb in the Up & Up Prenatal Vitamin (100 count).

117.    The highest levels of Lead were 378.61 ppb in Up & Up Prenatal Vitamin (100 count).

118.    The highest levels of Mercury were 5.36 ppb in Up & Up Prenatal Vitamin (100 count).

119.    In any case, as stated herein, no level of Heavy Metals is safe.

120.    Defendant's Marketing wrongfully fails to disclose to consumers the presence of Heavy Metals in its Prenatal Vitamins.

121.    Based on Defendant's Marketing, a reasonable consumer would not suspect the presence or risk of Heavy Metals, or any harmful level of a Heavy Metal, nor would a reasonable consumer be able to detect the presence of Heavy Metals in its Prenatal Vitamins without conducting his or her own scientific tests or reviewing scientific testing of the Products.

122.    Reasonable consumers must and do rely on Defendant to honestly report what its Prenatal Vitamins contain.

123.    In light of Defendant's Marketing, Defendant knew or should have known the Prenatal Vitamins contained or risked containing Heavy Metals.

124.    Defendant intended for consumers to rely on its Marketing, and reasonable consumers did in fact so rely.

125.    Defendant had a duty to ensure the Prenatal Vitamins were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

126.    Pursuant to the foregoing, Defendant's Marketing is deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California, as described more fully herein.

127.     Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false Marketing, and omissions.

## V.     DEFENDANT MISREPRESENTS THE AMOUNT OF FOLIC ACID IN ITS PRENATAL VITAMINS

### A.     Defendant Falsely Markets the Amount of Folic Acid in its Prenatal Vitamins

128.     Defendant describes to consumers on its website that its Products contain necessary nutrients, including folic acid, "to support your growing baby."[75]

**Description**

Get your body ready for baby or take care of your growing little one with the Prenatal Vitamin Dietary Supplement Tablets from up & up™. You only need one tablet per day to supply your body with the nutrients it needs, including vitamin D, iron and folic acid, to support your growing baby. Even before you know your pregnant, you can get your body prepared with the nutrients needed for a healthy pregnancy. Free of gluten, wheat and lactose, these prenatal vitamin tablets are ideal for future moms with dietary restrictions and no artificial flavors offer confident use.

129.     Each of Defendant's Products states on the "Supplement Facts" label that it contains a certain amount of Folic Acid per serving.

---

[75]https://www.target.com/p/prenatal-vitamin-dietary-supplement-tablets-up-up/-/A-16292263 (last accessed January 5, 2022).

CLASS ACTION COMPLAINT

1     (a)     Up & Up Prenatal Multivitamins:

# Supplement Facts

Serving Size 1 Tablet

| Amount Per Serving | % Daily Value for Pregnant & Lactating Women |
|---|---|
| Vitamin A 1200 mcg (50% as beta-carotene) | 92% |
| Vitamin C 60 mg | 50% |
| Vitamin D3 10 mcg (400 IU) | 67% |
| Vitamin E 13.5 mg | 71% |
| Thiamin 1.7 mg | 121% |
| Riboflavin 2 mg | 125% |
| Niacin 20 mg | 111% |
| Vitamin B6 2.5 mg | 125% |
| Folate 1360 mcg DFE (800 mcg folic acid) | 227% |
| Vitamin B12 8 mcg | 286% |
| Biotin 300 mcg | 857% |
| Pantothenic Acid 10 mg | 143% |
| Calcium 300 mg | 23% |
| Iron 28 mg | 104% |
| Iodine 150 mcg | 52% |
| Magnesium 50 mg | 13% |
| Zinc 15 mg | 115% |
| Copper 2 mg | 154% |

**INGREDIENTS:** Calcium Carbonate, Dicalcium Phosphate, Microcrystalline Cellulose, Ferrous Fumarate, Magnesium Oxide, Ascorbic Acid, Croscarmellose Sodium, Maltodextrin. Contains 2% or less of beta-carotene, biotin, calcium silicate, carnauba wax, cholecalciferol, cupric sulfate, cyanocobalamin, D-calcium pantothenate, *dl*-alpha tocopheryl acetate, FD&C blue no. 2 lake, FD&C red no. 40 lake, folic acid, magnesium stearate, niacinamide, polyethylene glycol, polyvinyl alcohol, potassium iodide, pyridoxine hydrochloride, retinyl acetate, riboflavin, silica, stearic acid, talc, thiamine mononitrate, titanium dioxide (color), zinc oxide.

**Suggested Use:** Adults, take one (1) tablet daily with food as a dietary supplement.

**WARNING: ACCIDENTAL OVERDOSE OF IRON-CONTAINING PRODUCTS IS A LEADING CAUSE OF FATAL POISONING IN CHILDREN UNDER 6. KEEP THIS PRODUCT OUT OF REACH OF CHILDREN. IN CASE OF ACCIDENTAL OVERDOSE, CALL A DOCTOR OR POISON CONTROL CENTER IMMEDIATELY.**

Tablet color may vary.

1    (b)  Up & Up Prenatal Vitamin:

1                (c)     Up & Up Prenatal Multivitamin Gummies – Lemon & Raspberry

2 Lemonade:



130.     Defendant's Marketing of its Products' Folic Acid, along with Defendant falsely stating as "fact" that its Prenatal Vitamins contain a specific amount of Folic Acid, demonstrates its recognition of the importance of Folic Acid in the development of a baby in-utero.

131.     Based on Defendant's decision to market its Prenatal Vitamins as containing a certain amount of Folic Acid in a serving, it had a duty to ensure that its statements were true and not misleading. As such, Defendant knew or should have known it was falsely Marketing the amount of Folic Acid in its Prenatal Vitamins.

132.     Defendant's Marketing of the Prenatal Vitamins fails to accurately state that the Products actually contain, or have a risk of containing, less Folic Acid than is promised on the Products' labels, while also promoting the Products' inclusion of Folic Acid to support a healthy pregnancy.

133.     As a result of Defendant's false and misleading labeling, a reasonable consumer would have no reason to suspect the Prenatal Vitamins had a risk of containing less Folic Acid than promised on the label without conducting his or her own scientific tests or reviewing third party scientific testing of the Products.

**B.     Due to the Misrepresentation of Folic Acid in the Prenatal Vitamins, Defendant's Marketing is Misleading**

134.     At all times during the Class Period, Defendant knew or should have known its Marketing was misleading. Defendant failed to disclose the correct amount of Folic Acid in its Prenatal Vitamins, even though Defendant touted its Products as "complete," containing "essential" and "necessary" nutrients, including Folic Acid.

135.     Defendant asserts that its Products are comparable to national name brand Prenatal Vitamins.

136.      Defendant's knew or should have known its Prenatal Vitamins contained or had a risk of containing less Folic Acid than promised on the Products' labels due to Defendant's

Marketing its Products as containing "essential" and "necessary" nutrients. Defendant was aware of this risk and failed to disclose it to the Plaintiff and the Class.

137.    Defendant knew or should have known that women who are pregnant or may become pregnant who consume low amounts of Folic Acid are at higher risk of miscarrying and placing their babies at higher risk of developing NTDs, such as spina bifida.

138.    Defendant knew or should have known that it owed consumers a duty of care to ensure its Products either contained the amount of Folic Acid represented on the label, or, alternatively, truthfully representing the actual amount of Folic Acid in its Prenatal Vitamins.

139.    Defendant knew or should have known it owed consumers a duty of care to accurately disclose the amount of Folic Acid in its Prenatal Vitamins.

140.    Defendant knew or should have known consumers purchased the Prenatal Vitamins based on the reasonable expectation that Defendant manufactured the Prenatal Vitamins to be of the standard of national name brand prenatal vitamins. Based on this expectation, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the Prenatal Vitamins to the highest standards for ensuring the labels accurately reflected the amount of Folic Acid contained in the final Products.

141.    The labels for Defendant's Prenatal Vitamins represent that the Products contain a certain amount of Folic Acid.  But Defendant's Products contain a different amount of Folic Acid than what is represented on their labels.

142.    Despite the known risks of Folic Acid deficiency for women who are pregnant or may become pregnant, Defendant has negligently, recklessly, and/or knowingly sold the Prenatal Vitamins with labels that falsely asserted the Products contained an amount of Folic Acid that they in fact did not contain.

CLASS ACTION COMPLAINT

143.     Based on the foregoing, reasonable consumers, like Plaintiff, would consider an amount of Folic Acid that was deficient, or risked being deficient, to the amount stated on the product label a material fact when considering what prenatal vitamin to purchase.

144.     Defendant knew or should have known that monitoring and accurately reporting the amount of Folic Acid in its Prenatal Vitamins was not only important but critical.

145.     Defendant also knew or should have known that adequately representing the amount of Folic Acid in its Prenatal Vitamins was likewise important to its and health-conscious consumers, like Plaintiff and Class members.

146.     Defendant knew or should have known it could control the amount of Folic Acid in the Prenatal Vitamins by monitoring its presence and adjusting any formulation to increase the amount of Folic Acid in its Products.

147.     Defendant knew or should have known its failure to adequately report the amount of Folic Acid in the Prenatal Vitamins continued throughout the Class Period.

148.     Defendant's Marketing was misleading due to its failure to disclose the true amount of Folic Acid in the Prenatal Vitamins.

149.     Defendant knew or should have known consumers paid a price premium and expected Defendant to represent the true amount of Folic Acid in the Prenatal Vitamins.

***Critical Ingredient: Folic Acid***

150.     Folic Acid, a dietary Folate equivalent ("**DFE**"), is crucial for brain function, and is especially important during pregnancy when cells and tissues are growing rapidly.[76] Studies have shown that proper allowances of Folic Acid can help prevent miscarriage, birth defects,

---

[76] NIH, Office of Dietary Supplements, "Folate Fact Sheet for Health Professionals," updated March 29, 2021, *available at* https://ods.od.nih.gov/factsheets/Folate-HealthProfessional/ (last accessed January 3, 2022) ("Folate Fact Sheet for Health Professionals").

NTDs, including spina bifida (which affects the spine) and anencephaly (which affects the brain), as well as skull malformation.[77] Therefore, Folic Acid consumption is critical for prenatal health.

151.     Folic Acid is a synthetic form of Folate. Folate is found naturally in foods such as certain vegetables, fruits, and nuts; however, it is difficult for humans to consume the recommended daily amount of Folate from diet alone.[78] Moreover, the human body absorbs more Folic Acid from fortified foods and supplements than from Folate naturally found in foods.[79] Therefore, Folic Acid is used in supplements to help humans meet their nutritional needs.[80] Folic Acid supplements are specifically recommended for women who are pregnant or may become pregnant because of the important role of Folic Acid in promoting prenatal health.

152.     Underscoring the importance of Folate to the nutrition of women of a childbearing age to a healthy pregnancy, and given the difficulty for most women to get the daily recommended amount of Folate through diet alone,[81] in January 1998, the FDA required food manufacturers to add Folic Acid to commonly consumed foods, including breads, cereals, rice, pasta, and other grains, to decrease the risk of NTDs.[82]

---

[77] *Folate Fact Sheet for Health Professionals, supra.*

[78] U.S. Department of Health & Human Services, Office of Women's Health, "Folic Acid," last updated April 1, 2019, *available at* https://www.womenshealth.gov/a-z-topics/folic-acid#:~:text=Folate%20is%20found%20naturally%20in%20some%20foods%2C%20including%20spinach%2C%20nuts,food%20has%20added%20folic%20acid (last accessed January 3, 2022) ("HHS Folic Acid").

[79] NIH, Office of Dietary Supplements, "Folate Fact Sheet for Consumers," Updated March 22, 2021, *available at* https://ods.od.nih.gov/factsheets/Folate-Consumer/ (last accessed January 3, 2022).

[80] *HHS Folic Acid, supra.*

[81] *CDC Folic Acid, supra.*

[82] Harvard School of Public Health, The Nutrition Source, "Folate (Folic Acid) – Vitamin B9," *available at* https://www.hsph.harvard.edu/nutritionsource/folic-acid/ (last accessed January 3, 2022).

153.     Three thousand pregnancies every year in the U.S. are affected by NTDs.[83] NTDs are not only debilitating for the baby and family, but also to the health care system. For example, "the total lifetime direct cost of care for a child born with spina bifida in the U.S. is estimated to be $791,900."[84] However, with Folic Acid fortification, NTD prevalence decreased by thirty-six percent in the U.S.[85]

154.     Therefore, Folic Acid is vital for women to consume prior to and during pregnancy to support prenatal health.[86] The less Folic Acid a woman who is pregnant or may become pregnant consumes, the more likely the baby will develop NTDs.[87]

155.     Defendant's labels for its Prenatal Vitamins state that the Products contain a certain amount of Folic Acid.

156.     However, at all times during the Class Period, Defendant did not truthfully represent the amount of Folic Acid in the Prenatal Vitamins.

157.     Defendant knew or should have known consumers reasonably expected it to truthfully report the amount of Folic Acid contained in the Prenatal Vitamins.

---

[83] CDC, "Folic Acid: Birth Defects COUNT," last reviewed November 9, 2017, *available at* https://www.cdc.gov/ncbddd/birthdefectscount/data.html (last accessed January 3, 2022).

[84] *Id.*

[85] *Id.*

[86] *CDC Folic Acid, supra.*

[87] *See, e.g., Folate Fact Sheet for Health Professionals, supra* (explaining that due to the importance of consuming Folic Acid prior to and during pregnancy, the National Institutes of Health recommends that women of reproductive ago who could become pregnant consume 400 mcg of a DFE such as Folic Acid daily, and that women who are pregnant consume 600 mcg DFE daily); HHS Office on Women's Health, "Folic Acid," last updated April 1, 2019, *available at* https://www.womenshealth.gov/a-z-topics/folic-acid (last accessed January 3, 2022) (stating that the HHS Office on Women's Health, in accordance with the U.S. Preventive Services Task Force Final Recommendation Statement, suggests that women who may become pregnant or are pregnant need 400 to 800 mcg of Folic Acid daily).

158.    Defendant knew or should have known the amount of Folic Acid contained in its Prenatal Vitamins was inconsistent with its Marketing. The Products contained an amount of Folic Acid inconsistent with the amount Defendant's represented on the labels.

159.    Defendant knew or should have known that consumers expected it to ensure the amount of Folic Acid in its Products complied with its Marketing.

160.    Defendant knew or should have known, yet failed to accurately represent, the amount of Folic Acid contained in the Prenatal Vitamins.

161.    Defendant's above-referenced statements and representations are false, misleading, and crafted to deceive the public as they create an image that the Prenatal Vitamins are "complete" with "essential" and "necessary" nutrients, including a certain amount of Folic Acid, to support a health pregnancy.

162.    Moreover, reasonable consumers, such as Plaintiff and Class members, would have no reason to doubt Defendant's statements regarding the amount of the Folic Acid in its Prenatal Vitamins. Defendant's misrepresentations and false statements of fact regarding the amount of Folic Acid coupled with its promotion of the Prenatal Vitamins nutritious value were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class, to purchase products they would not have if they had known the Prenatal Vitamins contained or risked containing a deficient amount of Folic Acid as compared to the amount promised on the label.

**C.    Defendant's Marketing Misled and Deceived Consumers as to the quantity of ingredients in its Prenatal Vitamins, including the amount of Folic Acid**

163.    As a result of Defendant's wrongful Marketing, which includes misleading, deceptive, unfair, and false statements, Defendant has generated substantial sales of the Prenatal Vitamins.

164.     Defendant's wrongful Marketing, which includes misleading, deceptive, unfair, and false representations, allowed it to capitalize on, and reap enormous profits from, consumers who paid the price premium for the Prenatal Vitamins.

165.     Defendant's Marketing wrongfully represents to consumers that its Prenatal Vitamins contained or risked containing less Folic Acid than the amount stated on the labels.

166.     Although Defendant misleadingly causes consumers to believe its Prenatal Vitamins provide an amount of Folic Acid as specified on the label through its Marketing and false labeling, the Prenatal Vitamins, in fact, do not contain the amount of Folic Acid they claim, and in some cases, contain less, which is material information to reasonable consumers.

167.     Plaintiff's counsel had the Defendant's Prenatal Vitamins tested and the tests confirmed that the Defendant misrepresented the quantity of Folic Acid in its Products.

168.     Although all Prenatal Vitamins contained a different amount of Folic Acid than stated on their labels, the Up & Up Prenatal Multivitamin (60 count) contained the lowest amount of Folic Acid at 11.66 μg per serving.[88] This is in sharp contrast to the 400 mcg of Folic Acid promised on the label for this Product.

169.     Therefore, Defendant's Marketing misrepresents the amount of Folic Acid its Products actually contain.

170.     Based on Defendant's Marketing and mislabeling, a reasonable consumer would not suspect the actual amount of Folic Acid in the Product to be different than the amount indicated on the Product label, nor would a reasonable consumer be able to detect the actual amount of Folic Acid in the Prenatal Vitamins without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

---

[88] Micrograms may be reflected as "mcg" or "μg." Plaintiffs' tests results were listed as μg.

171.    Reasonable consumers must and do rely on Defendant to honestly report the amount and value of Folic Acid contained in its Prenatal Vitamins.

172.    In light of Defendant's Marketing, Defendant knew or should have known it misrepresented the amount of Folic Acid in its Up & Up products.

173.    Defendant intended for consumers to rely on its Marketing, and reasonable consumers did in fact so rely.

174.    Defendant had a duty to ensure the Prenatal Vitamins were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

175.    Pursuant to the foregoing, Defendant's Marketing is deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California.

176.    Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false Marketing.

**DEFENDANT'S MISLEADING MARKETING VIOLATES 21 U.S.C. §343**

177.    Defendant's misleading statements to consumers that its Prenatal Vitamins are nutritious and nurturing of a healthy pregnancy and comparable to a national name brand prenatal vitamin violate 21 U.S.C. §343, which provides that dietary supplements are misbranded when they contain false statements on their labels.

178.    Defendant violated 21 U.S.C. §343 by not accurately detailing that the Prenatal Vitamins contain, or risk containing, Heavy Metals. Defendant's misleading Marketing includes false statements that the Prenatal Vitamins are "complete" with "essential" and "necessary" nutrients that support a health pregnancy. These statements are false as the Prenatal Vitamins contain or risk containing undisclosed levels of Heavy Metals.

179.    Defendant violated 21 U.S.C. §343 by falsely stating that the Prenatal Vitamins contained an amount of Folic Acid that was different than the amount the Products actually contained. These statements are false as the Prenatal Vitamins contained or risked containing a deficient amount of Folic Acid than the amount promised on the label.

180.    Accordingly, Defendant's mislabeling of its Prenatal Vitamins, which forms the basis of this lawsuit, constitutes a violation of 21 U.S.C. §343.

## DEFENDANT'S STATEMENTS AND OMISSIONS VIOLATE THE CURRENT GOOD MANUFACTURING PRACTICES GUIDELINES

181.    By law and regulation, supplement manufacturers like Defendant are required to comply with the current good manufacturing practices ("CGMP").  21 CFR §111.

182.    The Dietary Supplement ("DS") CGMP rule stated at 21 CFR §111 requires persons who manufacture, package, label or hold a dietary supplement to establish and comply with current good manufacturing practice to ensure the quality of the product and that the product is packaged and labeled as specified in the master manufacturing record.

183.    Defendant violated the DS CGMP rule by negligently, recklessly, and/or intentionally incorrectly claiming that its Prenatal Vitamins are nutritious, nurturing of a healthy pregnancy, and comparable to national name brand prenatal vitamins, and by not accurately detailing that its Products contain or risk containing Heavy Metals, and by falsely representing that the Products contained an amount of Folic Acid that was different than the amount the Products actually contained.

184.    Accordingly, Defendant's mislabeling of its  Prenatal Vitamins, which forms the basis of this lawsuit, constitutes a violation of the DS CGMP rule stated at 21 CFR §111.

CLASS ACTION COMPLAINT

**DEFENDANT'S STATEMENTS AND
OMISSIONS VIOLATE CALIFORNIA LAWS**

185.    California law is designed to ensure that a company's claims about its products are truthful and accurate.

186.    Defendant violated California law by negligently, recklessly, and/or intentionally incorrectly claiming that its Prenatal Vitamins are nutritious, nurturing of a healthy pregnancy, comparable to national name brand prenatal vitamins, and are "complete" and provide "essential" and "necessary" nutrients for a healthy pregnancy and by not disclosing the presence or risk of Heavy Metals in the Products.

187.    Defendant violated California law by negligently, recklessly, and/or intentionally stating the amount of Folic Acid in its Products that is, in fact, different than the amount represented on the Products label.

188.    Defendant's Marketing has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead relying upon each advertised misrepresentation.

189.    Defendant has engaged in this long-term advertising campaign to convince potential customers that its Prenatal Vitamins were nutritious, nurturing of a healthy pregnancy, comparable to national name brand prenatal vitamins, and did not contain or risk containing harmful ingredients, such as Heavy Metals, and contained the amount of Folic Acid that promised on the label.

**PLAINTIFF'S RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANTS**

190.    Plaintiff reasonably relied on Defendant's claims, warranties, representations, advertisements, and other Marketing concerning the particular qualities and benefits of the Prenatal Vitamins.

191.     Plaintiff read and relied upon the labels and packaging of the Prenatal Vitamins when making her purchasing decisions. Had she known Defendant did not disclose the presence or risk of Heavy Metals in its packaging, she would not have purchased the Prenatal Vitamins. Had she known the Prenatal Vitamins contained a different amount of Folic Acid than the label promised, she would not have purchased them.

192.     A reasonable consumer would consider the labeling of a product when deciding whether purchase a product. Here, Plaintiff relied on the specific statements and omissions on the Prenatal Vitamins labeling that led her to believe they were nutritious and nurturing of a healthy pregnancy, and free of the presence or risk of Heavy Metals, and that she was consuming the amount of Folic Acid as promised on the label.

## DEFENDANT'S KNOWLEDGE AND NOTICE OF ITS BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES

193.     Defendant had sufficient notice of its breaches of express and implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Prenatal Vitamins through its acknowledgement of the "essential" and "necessary" nutrients the Products contain.

194.     Defendant did not change its packaging or labels to include any disclaimer that its Prenatal Vitamins contained or may contain any levels of Heavy Metals. Defendant also did not correct its packaging or labels to state the accurate amount of Folic Acid in its Prenatal Vitamins.

## PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS

195.     Defendant knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Prenatal Vitamins and the target of its Marketing.

196.    Defendant intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Prenatal Vitamins, including Plaintiff and the proposed Class.

197.    Defendant directly marketed to Plaintiff and the proposed Class through statements on its website, labeling, advertising, and packaging.

198.    Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## **CLASS ACTION ALLEGATIONS**

199.    Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons residing in the United States or its territories who, during the maximum period of time permitted by law, purchased Up &Up Prenatal Vitamins (specifically, Prenatal Multivitamin; Prenatal Vitamins; and Prenatal Multivitamin Gummies – Lemon & Raspberry Lemonade), manufactured by Defendant, Target Corp. (the "Class").[89]

200.    Excluded from the Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

201.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

202.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

---

[89] Plaintiff reserves the right to amend this definition as necessary in accordance with applicable Federal and California law.

203.   Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

(a) whether Defendant owed a duty of care;

(b) whether Defendant knew or should have known that the Prenatal Vitamins contained Heavy Metals;

(c) whether Defendant knew or should have known that the Prenatal Vitamins contained a different, sometimes less, amount of Folic Acid than the amount represented on the Products' labels;

(d) whether Defendant represented and continue to represent that the Prenatal Vitamins are nutritious and nurturing of a healthy pregnancy;

(e) whether Defendant represented and continue to represent that the Prenatal Vitamins contain a different amount of Folic Acid than is in fact contained in the Products;

(f) whether Defendant represented and continues to represent that the manufacturing of its Prenatal Vitamins is subjected to rigorous quality standards;

(g) whether Defendant failed to disclose that its Prenatal Vitamins contained Heavy Metals;

(h) whether Defendant failed to accurately disclose the amount of Folic Acid contained in its Prenatal Vitamins;

(i) whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

(j) whether those representations are likely to deceive a reasonable consumer;

(k) whether Defendant had knowledge that those representations were false, deceptive, and misleading;

(l) whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(m) whether a representation that a Product is nutritious and nurturing of a healthy pregnancy, and does not contain or risk containing levels of Heavy Metals, is material to a reasonable consumer;

(n) whether a representation that a Product provides the amount of Folic Acid stated on the label is material to a reasonable consumer;

(o) whether Defendant's Marketing of its Prenatal Vitamins are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(p) whether Defendant violated California Business & Professions Code §§17200, et seq.;

(q) whether Defendant violated California Business & Professions Code §§17500, et seq.;

(r) whether Defendant violated California Civil Code §§1750, et seq.;

(s) whether Defendant violated 21 USC §343;

(t) whether Defendant violated the Good Manufacturing Practices Guidelines; and

(u) whether Plaintiff and the members of the Class are entitled to declaratory and injunctive relief.

204.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

205.     Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

206.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

207.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

208.     Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

209.     As a result of the foregoing, class treatment is appropriate.

## **COUNT I**
### **(Negligent Misrepresentation Against Defendant on Behalf of the Class)**

210.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

211.     Plaintiff reasonably placed her trust and reliance in Defendant's representations that the Prenatal Vitamins were as marketed to her and the Class, and were nutritious and nurturing of a healthy pregnancy, did not contain undisclosed levels of Heavy Metals, and contained the amount of Folic Acid as stated on the Product label.

212.     Because of the relationship between the parties, Defendant owed Plaintiff and the Class a duty to use reasonable care in the formulation, testing, manufacturing, Marketing, distribution, and sale of the Prenatal Vitamins, and to impart correct and reliable disclosures and statements concerning the presence of Heavy Metals and the amount of Folic Acid in the Prenatal Vitamins, or based on upon their superior knowledge of the physical and chemical make-up of the Products, having spoken, to say enough to not be misleading.

213.    Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, Marketing, distributing, and selling products to Plaintiff and the Class that did not have the ingredients, qualities, characteristics, and suitability for consumption as marketed by Defendants and by providing false, misleading, and/or deceptive information regarding the nature of the Prenatal Vitamins.

214.    Defendant knew or should have known the ingredients, qualities, and characteristics of the Prenatal Vitamins were not as advertised or suitable for their intended use (consumption by women who are pregnant or may become pregnant), and were otherwise not as warranted and represented.

215.    Plaintiff and the Class reasonably and justifiably relied upon the information supplied to them by the Defendant. A reasonable consumer would have relied on Defendant's warranties, statements, representations, advertising, packaging, labeling, and other Marketing as to the quality, make-up, and ingredients of the Prenatal Vitamins.

216.    As a direct and proximate result of Defendant's misrepresentations, Plaintiff and the Class suffered actual damages in that they purchased the Prenatal Vitamins that were worth less than the price paid and that they would not have purchased at all had they known they contained or may contain Heavy Metals that do not conform to the Product's labels, packaging, advertising, and statements, and did not contain the amount of Folic Acid promised on the Product's labels and packaging.

217.    Defendant failed to use reasonable care in its communications and representations to Plaintiff and the Class, especially in light of its knowledge of the presence of Heavy Metals in the Prenatal Vitamins, and the actual amount of Folic Acid in the Products, and the importance consumers place on ingredients when deciding whether to purchase products such as the Products.

CLASS ACTION COMPLAINT

218.     By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial, or alternatively, seek rescission and disgorgement under this Count.

**COUNT II**

**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendant on Behalf of the Class)**

219.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

220.     Plaintiff and each proposed Class member is a "consumer," as that term is defined in California Civil Code §1761(d).

221.     The Prenatal Vitamins are "goods," as that term is defined in California Civil Code §1761(a).

222.     Defendant is a "person" as that term is defined in California Civil Code §1761(c).

223.     Plaintiff and each proposed Class member's purchase of Defendant's Products constituted a "transaction" as that term is defined in California Civil Code §1761(e).

224.     Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act ("**CLRA**"):

(a)     California Civil Code §1770(a)(5), by negligently, recklessly, and/or intentionally representing that the prenatal vitamins are natural, nutritious, and nurturing of a healthy pregnancy, and by failing disclose levels of Heavy Metals in the Prenatal Vitamins, with, and by representing that the Products contained an amount of Folic Acid that they, in fact, did not;

(b)     California Civil Code §1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Prenatal Vitamins were of a particular standard, quality, or grade, when they were of another;

(c)  California Civil Code §1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Prenatal Vitamins with intent not to sell them as advertised; and

(d)  California Civil Code §1770(a)(16), by representing that the Prenatal Vitamins have been supplied in accordance with previous representations when they have not.

225.     As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading Marketing described herein in any manner in connection with the advertising and sale of the Prenatal Vitamins.

226.     Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code §1780(e) and California Code of Civil Procedure §1021.5.

## COUNT III
### (Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendant on Behalf of the Class)

227.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

228.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

229.     As set forth herein, Defendant's claims that the Prenatal Vitamins are natural, nutritious, and nurturing of a healthy pregnancy are literally false and likely to deceive the public.

230.     Defendants' claims that the Prenatal Vitamins are natural, nutritious, and nurturing of a healthy pregnancy are untrue or misleading, as is failing to disclose the presence or risk of levels of Heavy Metals in the Products, and stating that the Products provided an amount of Folic Acid that they, in fact, did not.

231.     Defendant knew, or reasonably should have known, that all these claims were untrue or misleading.

232.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that, so long as the Prenatal Vitamins are as advertised: natural, nutritious, and nurturing of a healthy pregnancy, do not contain or risk containing Heavy Metals, and contain the amount of Folic Acid as promised on the Product label.

233.     Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Prenatal Vitamins.

**COUNT IV**
**(Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendant on Behalf of the Class)**

234.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

235.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

236.     Defendant's statements that the Prenatal Vitamins are natural, nutritious, and nurturing of a healthy pregnancy are literally false and likely to deceive the public, as is Defendant's failing to disclose the presence or risk of Heavy Metals in the Prenatal Vitamins, and that its Products contain an amount of Folic Acid that, in fact, they do not.

**Unlawful**

237.     As alleged herein, Defendant has advertised the Prenatal Vitamins with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

(a)     The CLRA, California Business & Professions Code §§1750, et seq.; and

(b)      The False Advertising Law, California Business & Professions Code §§17500, et seq.

**Unfair**

238.      Defendant's conduct with respect to the labeling, packaging, advertising, Marketing, and sale of the Prenatal Vitamins is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

239.      Defendant's conduct with respect to the labeling, packaging, advertising, Marketing, and sale of the Prenatal Vitamins is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

240.      Defendant's conduct with respect to the labeling, packaging, advertising, Marketing, and sale of the Prenatal Vitamins is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

241.      In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

242.      On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale of the Prenatal Vitamins, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT V
**(Breach of Express Warranty, California Commercial Code §2313,
Against Defendant on Behalf of the Class)**

243.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

244.    Defendant marketed and sold its Prenatal Vitamin into the stream of commerce with the intent that the Prenatal Vitamins would be purchased by Plaintiff and the Class.

245.    As set forth herein, Defendant made express representations to Plaintiff and the Class that the Prenatal Vitamins were nutritious and nurturing of a health pregnancy.

246.    Defendant made these express warranties regarding the Prenatal Vitamins quality, ingredients, and fitness for consumption in writing through its website, advertising, and Marketing materials, and on the Prenatal Vitamins' packaging and labels.  These express warranties became part of the basis of the bargain Plaintiff and the Class entered into upon purchasing the Products.

247.    Defendant's advertisements, warranties, and representations were made in connection with the sale of the Prenatal Vitamins to Plaintiff and the Class. Plaintiff and the Class relied on Defendant's advertisements, warranties, and representations regarding the Prenatal Vitamins in deciding whether to purchase Defendant's Products. Such promises became part of the basis of the bargain between the parties, and thus constituted express warranties.

248.    On the basis of these express warranties, Defendant sold to Plaintiffs and the Class members the Prenatal Vitamins.

249.    Defendant knowingly breached the express warranties in that they are not nutritious and nurturing of a healthy pregnancy, as the Prenatal Vitamins:

(a)    Contain or risk containing undisclosed levels of Heavy Metals; and

(b)    do not contain the amount of Folic Acid promised on the Product label.

250.    Defendant was on notice of this breach as they have, and had, exclusive knowledge of the physical and chemical make-up of the Prenatal Vitamins and they are required to comply with the law and regulation.

251.    Privity exists because Defendant expressly warranted to Plaintiff and the Class that the Prenatal Vitamins were nutritious and nurturing of a healthy pregnancy, and by failing to disclose levels of Heavy Metals and misrepresenting the amount of Folic Acid in its Products.

252.    As a direct and proximate result of Defendant's breaches of its express warranties, Plaintiff and the Class sustained damages as they purchased the Prenatal Vitamins that were worth less than the price paid and they would not have purchased at all had they known the Prenatal Vitamins contained or may contain undisclosed levels of Heavy Metals and that they contained a different amount of Folic Acid than was stated on the Products' labels.

253.    Plaintiff, on behalf of herself and the Class, seeks actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**<u>COUNT VI</u>**
**(Breach of Implied Warranty of Merchantability, California Commercial Code §2314, Against Defendant on Behalf of the Class)**

254.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

255.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class members.

256.    There was a sale of goods from Defendant to Plaintiff and the Class members.

257.    As set forth  herein, Defendant manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiff and members of the Class, Defendant impliedly warranted to them that the Prenatal Vitamins were of merchantable quality, fit for their

ordinary use, and conformed to the promises and affirmations of fact made on the Products' packages and labels, including that the Products were nutritious and nurturing of a healthy pregnancy, and failing to disclose levels of Heavy Metals and stating the Products contained an amount of Folic Acid that they did not.

258.     Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Prenatal Vitamins.

259.     Contrary to these representations and warranties, the  Prenatal Vitamins were not fit for their ordinary use, which is consumption by women who are pregnant or may become pregnant, and did not conform to Defendant's advertisements, warranties, and representations in that they are not nutritious and nurturing of a healthy pregnancy as they:

> (a)     contain or risk containing undisclosed levels of Heavy Metals; and

> (b)     do not contain the amount of Folic Acid promised on the Product label.

260.     These promises became part of the basis of the bargain between the parties and thus constitute implied warranties.

261.     Defendant breached the implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the packaging or label, as each Product contained or risked containing Heavy Metals that do not conform to the packaging and misrepresented the quantity or amount of the ingredients, including Folic Acid, stated on the label.

262.     Defendant was on notice of this breach as it was aware of the levels of Heavy Metals and actual amount of Folic Acid in the Products as they have, and had, exclusive knowledge of the physical and chemical make-up of the Prenatal Vitamins and they are required to comply with the law and regulation.

263.     Privity exists because Defendant impliedly warranted to Plaintiff and the Class members through the warranting, packaging, advertising, Marketing, and labeling that the Prenatal

CLASS ACTION COMPLAINT

Vitamins were nutritious and nurturing of a healthy pregnancy, and by failing to disclose levels or the risk of levels of Heavy Metals and misrepresenting the amount of Folic Acid in its Products.

264.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Prenatal Vitamins that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of Heavy Metals in the Products and that the Products contained, or risked containing, a deficient amount of Folic Acid as compared to the amount stated on the label.

265.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to its implied warranties and resulting breach.

## COUNT VII
### (Unjust Enrichment Against Defendant on Behalf of the Class)

266.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

267.    Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Prenatal Vitamins. Defendant knowingly and willingly accepted and enjoyed these benefits.

268.    Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Prenatal Vitamins would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

269.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

270.    Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

271.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VIII**
**(Fraudulent Misrepresentation Against Defendant on Behalf of the Class)**

272.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

273.    Defendant falsely represented to Plaintiff and the Class that its Prenatal Vitamins were nutritious and nurturing of a health pregnancy.

274.    Defendant intentionally, knowing, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Prenatal Vitamins.

275.    Defendant knew its representations about the Prenatal Vitamins were false in that the Products contained, or may have contained, undisclosed levels of Heavy Metals that do not conform to the Products' labels, packaging, advertising, and statements. Defendant also knew its representations about the Prenatal Vitamins were false in that the Products did not contain the amount of Folic Acid promised on the Product label.

276.    Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

277.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Prenatal Vitamins to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Prenatal Vitamins, Plaintiff's and the Class' reliance on Defendant's misrepresentations was justifiable.

278.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased the Prenatal Vitamins that are worth less than the price they paid and that they would not have purchased at all had they known the Products contained, or may have contained, undisclosed levels of Heavy Metals that do not conform to the Product's labels, packaging, advertising, and statements, as well as do not contain the amount of Folic Acid promised on the label.

279.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT IX
### (Fraud by Omission Against Defendant on Behalf of the Class)

280.    Plaintiff repeats and realleges the allegations contained above, as though fully set forth herein.

281.    Defendant concealed from and failed to disclose to Plaintiff and the Class that its Prenatal Vitamins contained, or may have contained, undisclosed levels of Heavy Metals that do not conform to the Products' labels, packaging, advertising, and statements. Defendant concealed from and failed to disclose to Plaintiff and the Class that its Prenatal Vitamins did not contain the amount of Folic Acid promised on the Products' labels.

282.    Defendant was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Prenatal Vitamins because: (1) Defendant was in a superior position to know the true state of facts about its Products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by women who are pregnant or may become pregnant; (3) Defendant must comply with legal and regulatory guidelines; and (4) Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

283.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Prenatal Vitamins.

284.    Plaintiff and the Class justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Prenatal Vitamins, which is inferior when compared to how the Prenatal Vitamins are advertised and represented by Defendant.

285.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased the Prenatal Vitamins that are worth less than the price they paid and that they would not have purchased at all had they known the Products contained or risked containing Heavy Metals that do not conform to the Product's labels, packaging, advertising, and statements, and had they known the Prenatal Vitamins contained, or had a risk of containing, a deficient amount of Folic Acid as compared to the amount stated on the Product label.

286.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other just and proper relief available under the laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Prenatal Vitamins until the higher and/or unsafe levels of Heavy Metals are removed;

C. An order enjoining Defendant from selling the Prenatal Vitamins until any levels, or risk of any levels, of Heavy Metals are disclosed on the Products' labels.

D. An order enjoining Defendant from selling the Prenatal Vitamins until all Product labels reflect the accurate amount of Folic Acid contained in the Product;

E. An order enjoining Defendant from selling the Prenatal Vitamins in any manner suggesting or implying that they are natural, nutritious, and nurturing of a healthy pregnancy;

F. An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Prenatal Vitamins;

G. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

H. An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law, False Advertising Law, or CLRA, plus pre- and post-judgment interest thereon;

I. An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

J. An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

K. An order requiring Defendant to pay punitive damages on any count so allowable;

L. An order awarding attorneys' fees and costs to Plaintiff and the Class; and

M. An order providing for all other such equitable relief as may be just and proper.

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2

Plaintiff hereby demands a trial by jury on all issues so triable.

3

4
Dated: February 18, 2022        MILLER SHAH LLP

5
By:  */s/ Kolin C. Tang*
Kolin C. Tang (SBN 279834)

6
19712 MacArthur Blvd., Suite 222
Irvine, CA 92612

7
Telephone: (866) 545-5505
Facsimile: (866) 300-7367

8
Email: kctang@millershah.com

9
LOCKRIDGE GRINDAL NAUEN P.L.L.P.

10
ROBERT K. SHELQUIST*
MEGAN S. VAN DYKE*

11
CATHERINE A. PETERSON*
100 Washington Avenue South, Suite 2200

12
Minneapolis, MN 55401
Telephone: (612) 339-6900

13
Facsimile:  (612) 339-0981

14
E-mail: rkshelquist@locklaw.com
E-mail: msvandyke@locklaw.com

15
E-mail: capeterson@locklaw.com

16
Charles J. LaDuca

17
Alexandra C. Warren
CUNEO GILBERT &

18
LADUCA, LLP
4725 Wisconsin Avenue, NW

19
Suite 200
Washington, DC  20016

20
P: 202-789-3960

21
F:  202-789-1813
charles@cuneolaw.com

22
awarren@cuneolaw.com

23

24

25

26

27

28

- 66 -

CLASS ACTION COMPLAINT

PGMBM, LLC
Harris L. Pogust, Esq.*
Joshua M. Neuman, Esq.*
Jordyn N. Mitzman, Esq.*
161 Washington Street, Suite 250
Conshohocken, PA 19428
Telephone: (610) 941-4204
Facsimile: (610) 941-4245
hpogust@pgmbm.com
jneuman@pgmbm.us
jmitzman@pgmbm.us

James C. Shah (SBN 260435)
MILLER SHAH LLP
1845 Walnut St., Suite 806
Philadelphia, PA 19103
Telephone: (856) 526-1100
Facsimile: (866) 300-7367
jcshah@millershah.com

*Pro Hac Vice admission to be sought*

**Attorneys for Plaintiff**

CLASS ACTION COMPLAINT